894 A.2d 668 (2006)
384 N.J. Super. 197
Winifred PRYCE, Plaintiff-Appellant,
v.
Patrick Anthony SCHARFF, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2006.
Decided March 27, 2006.
*669 Roger B. Radol argued the cause for appellant (Klein & Radol, attorneys; Mr. Radol and James J. Fitzpatrick, Englewood, on the brief).
Respondent did not file a brief.
Dennis J. Conklin, Senior Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Human Services, Office of Child Support Services (Zulima V. Farber, Attorney General, attorney; Mr. Conklin, on the brief; Patrick DeAlmeida, Assistant Attorney General, of counsel).
Claudette L. St. Romain, Jersey City, argued the cause for amicus curiae Seton Hall Law School, Center for Social Justice (Ms. St. Romain, of counsel and on the brief).
Mitchell I. Steinhart, attorney for amicus curiae Bergen County Board of Social Services (Mr. Steinhart, of counsel and on the brief).
Before Judges COLLESTER, LISA and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
The issues on this appeal are whether and when the Probation Division is obligated to collect post-judgment interest on overdue child support, where the underlying child support is being paid through Probation.
A brief sketch of the factual and procedural background will suffice. Plaintiff, Winifred Pryce, and defendant, Patrick Scharff, were married in 1978. They had one daughter, born in 1980. The couple separated in 1985. Defendant's child support payment was set at thirty-five dollars per week in 1986. After he moved to Florida and fell behind in his support payments, the trial court ordered him to pay one hundred dollars per week, including arrears, to be collected through the Probation Division.
*670 In 2003, defendant filed a motion in the Family Part in Bergen County for emancipation of his daughter and for termination of child support. On November 7, 2003, the trial court denied his motion for emancipation and termination of child support and directed the parties to exchange case information statements.
On February 4, 2004, plaintiff filed a motion to assess interest on defendant's overdue child support. Her notice of motion asked the court to "[increase] the Defendant's Probation Department Child Support Account for accumulated interest from April 11, 1986 through September 16, 2003 in the amount of $15,459.18." On June 3, 2004, the trial judge denied plaintiff's motion to add to the Probation Division account the accumulated interest on the arrearages. Relying on a September 3, 2003 letter from the Department of Human Services, Division of Family Development (DHS), the judge stated, "[a]ccording to informational Transmittal No. 58 of the Division of Family Development, the current interest rate [on child support judgments] is set at zero. Therefore, the Court will not increase the arrears on the [f]ather's Bergen County Probation Department [account]." The DHS transmittal letter asserted that because Rule 4:42-11 provides that judgments are subject to post-judgment interest except as provided by law, and because N.J.S.A. 2A:17-56.20 allows DHS as the "IV-D agency" to set the interest rate on child support judgments and DHS had not yet set an interest rate, the rate was currently zero. The judge reasoned that while the New Jersey Court Rules govern interest earned on a judgment, and unpaid child support becomes a judgment by operation of law, nonetheless "`Title IV-D of the [Federal] Social Security Act delegates responsibility for the operation of the Child Support Program to ... the Department of Human Services, Division of Family Development, Office of Child Support Services.' N.J.A.C. 10:110-1.2(a)."
Plaintiff filed a motion for reconsideration on June 28, 2004. Defendant had ceased to participate in the case, and at the direction of the trial judge, plaintiff gave notice to the Federal and State governments to determine whether they wished to participate due to the importance of the issue. The Federal government declined to participate, but at the request of DHS, an attorney for the Bergen County Board of Social Services participated in the hearing.
The trial judge denied plaintiff's reconsideration motion. In accepting the Board's contention that Probation was not required to collect post-judgment interest on child support arrears, the judge stated that "in essence the payees are not . . . assisted in any way to collect . . . the judgment interest, and I think that Probation should have the technology to do it and should do it." She concluded that the transmittal letter was "just plain wrong," but she also concluded that although the courts had authority to impose post-judgment interest on child support arrears,
it appears to be within the discretion of the [IV]-D agency as to whether or not to collect a late fee or interest and they have decided thus far not to collect it. . . It doesn't seem to me to be the best thing for the children, but it doesn't appear to me to be unconstitutional.
The judge concluded that plaintiff would be entitled to a judgment for the overdue support, with post-judgment interest, but that it was not the Probation Division's responsibility to collect the interest. Therefore, she declined to enter an order adding the interest to the Probation account.
Plaintiff appealed. The Bergen County Board of Social Services participated in *671 the appeal, as it did at the trial level. We granted motions from the New Jersey Department of Human Services, Office of Child Support Services (DHS) and the Seton Hall Law School Center for Social Justice to appear as amicus curiae.

I
We begin by defining precisely what is at issue. At oral argument, the attorney representing DHS conceded that, under the Court Rules, child support judgments bear post-judgment interest at the rates provided in the Rules. R. 4:42-11(a). Therefore, had plaintiff filed a motion simply asking the court to enter a judgment for interest on the child support arrears, DHS would have had no objection. DHS also posed no objection to Probation collecting the interest in its capacity as an administrative arm of the Administrative Office of the Courts, if required to do so by the Court Rules. The issue, as framed by DHS, is whether Probation is required to collect the interest in its capacity as the contractual designee of DHS as the IV-D agency. The State's position is that under Federal and State law, the IV-D agency is not required to collect interest on child support judgments, and that the State has made a policy decision not to collect the interest. Therefore, collection of interest is not included in the IV-D contract and Probation will not receive IV-D funding for performing that function. The State further contends that its policy choice is reflected in the Court Rules. Alternatively, the State argues that if the Court Rules require Probation to collect interest on child support judgments, it may do so, but without IV-D funding support.
We decline to address the contractual and funding issues because they are not properly before us. This case is not a dispute between Probation and DHS over funding. It is a dispute between DHS (represented below by its designee the Bergen County Board of Social Services) and plaintiff over whether she is entitled to an order adding post-judgment interest to defendant's Probation-enforced child support account.

II
Since the facts are undisputed, and the trial judge's decision turned solely on her interpretation of the law, our review is de novo. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). Likewise, as further discussed below, we find no basis on which to defer to the State agency's construction of the law, because it is not grounded in any DHS regulation, formal Attorney General opinion or other document worthy of deference, and it is contrary to the legislative history our research has uncovered.[1]

Federal law
Federal law requires states to efficiently collect child support as a condition of receiving Federal funding. The Federal system was cogently summarized in the Supreme Court's opinion in Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997):

*672 To qualify for federal AFDC funds, the State must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV-D of the Social Security Act, 42 U.S.C.A. §§ 651-669b (Nov.1996 Supp.), and will do so pursuant to a detailed plan that has been approved by the Secretary of Health and Human Services (Secretary). § 602(a)(2); see also § 652(a)(3). The Federal Government underwrites roughly two-thirds of the cost of the State's child support efforts. § 655(a). But the State must do more than simply collect overdue support payments; it must also establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders. §§ 651, 654.
A State must provide these services free of charge to AFDC recipients and, when requested, for a nominal fee to children and custodial parents who are not receiving AFDC payments. §§ 651, 654(4). . . .
The structure of each State's Title IV-D agency, like the services it provides, must conform to federal guidelines. For example, States must create separate units to administer the plan, § 654(3), and to disburse collected funds, § 654(27), each of which must be staffed at levels set by the Secretary, 45 CFR § 303.20 (1995). If a State delegates its disbursement function to local governments, it must reward the most efficient local agencies with a share of federal incentive payments. 42 U.S.C.A. § 654(22) (Nov.1996 Supp.). To maintain detailed records of all pending cases, as well as to generate the various reports required by federal authorities, States must set up computer systems that meet numerous federal specifications. § 654a. Finally, in addition to setting up this administrative frame-work, each participating State must enact laws designed to streamline paternity and child support actions. §§ 654(20), 666.
.... If a State does not "substantially comply" with the requirements of Title IV-D, the Secretary is authorized to penalize the State by reducing its AFDC grant.
[Blessing, supra, 520 U.S. at 333-335, 117 S.Ct. at 1356-1357, 137 L.Ed.2d at 577-579.]
In New Jersey, the Department of Human Services (DHS) is the designated "IV-D agency." N.J.S.A. 2A:17-56.52. DHS in turn has contracted with the Probation Division of the Administrative Office of the Courts to serve as the entity responsible for collecting child support. See FFY 2004 Cooperative Agreement Between the Division of Family Development and the Administrative Office of the Courts.
Pursuant to the Federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), States that participate in the IV-D program must enact legislation providing that "any payment or installment of support under any child support order" be treated as "a judgment by operation of law . . . including the ability to be enforced." 42 U.S.C.A. § 666(a)(9). Participating States must also "provide services relating to ... enforcement of child support obligations, as appropriate, under the plan" and "enforce any support obligation." 42 U.S.C.A. 654(4)(A) and (B). This includes enforcement of a "support order," which is defined as

a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child ... which provides for monetary *673 support, health care, arrearages, or reimbursement, and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees, and other relief.
[42 U.S.C.A. 653(p); emphasis added.]
The Federal Act also defines "child support" in almost identical terms as those defining a support order:

amounts required to be paid under a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing State, or a child and the parent with whom the child is living, which provides for monetary support, health care, arrearages or reimbursement, and which may include other related costs and fees, interest and penalties, income withholding, attorney's fees, and other relief.
[42 U.S.C.A. 659(f)(2); emphasis added.]
The Act defines "overdue support" as
the amount of a delinquency pursuant to an obligation determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a minor child which is owed to or on behalf of such child.
[42 U.S.C.A. 666(e).]
Federal law, 42 U.S.C.A. § 654a(e)(4)(A), also requires that the State child support tracking system "include a record of the amount of monthly... support owed under the order, and other amounts (including arrearages, interest or late payment penalties and fees) due or overdue under the order." Ibid. (emphasis added); see also 45 C.F.R. § 307.11(e)(4), which requires that the IV-D agency's computerized records
shall include information for every case in the State case registry receiving services under an approved State plan that has a support order in effect. The information must include:
(i) The amount of monthly (or other frequency) support owed under the order;
(ii) Other amounts due or overdue under the order including arrearages, interest or late payment penalties and fees.
From these statutory provisions, we conclude that federal law requires the IV-D agency to collect child support, including overdue support; that child support must be enforceable as a judgment in the same way that any other state court judgment is enforceable; and that if under state law a judgment carries post-judgment interest, the IV-D agency must collect the interest as part of the overdue support. For that reason, the IV-D agency must have a computer system that will allow it to include post-judgment interest, when imposed by state law, as part of its record of overdue child support.
The Federal Act provides that the State will receive incentive payments, pegged to the amount of child support collected and the efficiency with which the collections are made. See 42 U.S.C.A. § 658a. Efficiency is calculated by comparing the amount collected with the administrative cost of collection. 42 U.S.C.A. § 658a(b)(6)(E)(i). Therefore, the State has an interest in the cost-effectiveness of its child support collection system and may lose federal incentive funds if its system is not cost effective. We infer that the State may reasonably take into account cost efficiency in its determination as to whether and when to impose post-judgment interest on overdue child support.
*674 As further discussed below, this concern for cost efficiency explains why our Court Rules treat interest on child support judgments somewhat differently than interest on other judgments, by providing that past-due child support payments "are subject to post-judgment interest ... at the time of satisfaction or execution." R. 5:7-5(g). Thus, the IV-D agency is required to incur the cost of calculating interest at the point where it has located assets (e.g., inheritances, bank accounts, tax refunds) from which the interest can be collected, or where the obligor is seeking a satisfaction of judgment and presumably is motivated to pay the interest so that the lien of the judgment may be removed from encumbered assets such as a house that is about to be sold.

State law
In 1998, the Legislature enacted the New Jersey Child Support Program Improvement Act, N.J.S.A. 2A:17-56.7a. The Act was "intended to implement requirements which the State must adopt under the federal `Personal Responsibility and Work Opportunity Reconciliation Act of 1996'" Assembly Judiciary Committee Statement to Assembly No. 1645. Accordingly, the Act gave the Department of Human Services broad powers to enable the agency to enforce child support orders. The Committee Statement notes that the Act would "[p]rovide that, once docketed, judgments for child support shall be enforced in the same manner as other civil money judgments." The Act further recites that the collection of child support is "essential to the ability of families [receiving Work First New Jersey funding] to achieve and maintain self-sufficiency." N.J.S.A. 2A:17-56.7b(c). The Act was also intended to maximize available federal funding. N.J.S.A. 2A:17-56.7b(e). The Act further provided that all support orders are to be enforced by withholding income from the obligor unless the parties agree otherwise or the court so orders for good cause. N.J.S.A. 2A:17-56.8.
The Act provides that the Probation Division will implement collection of child support, that DHS will adopt regulations to implement the Act, and that the Supreme Court "shall promulgate rules and procedures as may be necessary for the implementation of this act by the courts and probation departments." N.J.S.A. 2A:17-56.9b(a) and (b). See also N.J.S.A. 2A:17-56.13 (child support to be paid through Probation).
Further, a child support obligee whose child support is not currently being collected through Probation may file for income withholding where support payments are in arrears for at least fourteen days. N.J.S.A. 2A:17-56.14. Child support payments "not presently made through the probation department shall be so made upon application of either party" absent a showing of good cause. Ibid. Upon the request of either party, Probation may charge a $25 "monitoring fee" to offset the cost of "keeping adequate records to document, track, and monitor support payments." Ibid. See also N.J.S.A. 2A:17-56.22 (authorizing application fee up to $25 for obligee who does not receive AFDC and who applies for IV-D services).
In this context, we now turn to the provision upon which the State relies to support its position:
a. In enforcing all existing and future orders for support, and notwithstanding other provisions to the contrary, the State IV-D agency, without a new order, shall have the authority to assess interest or late payment fees on any support order not paid within 30 days of the due date.

b. The late payment fee or interest shall be determined by the State IV-D agency within amounts specified by the *675 federal Department of Health and Human Services.

c. The fee or interest shall accrue as arrearages accumulate and shall not be reduced upon partial payment of arrears. The fee or interest may be collected only after the full amount of overdue support is paid and all State requirements for notice to the obligor have been met.

d. The collection of the fee or interest shall not directly or indirectly reduce the amount of current or overdue support paid to the obligee to whom it is owed.
e. The late payment fee or interest shall be uniformly applied in all cases administered under the State IV-D program, including public assistance, nonpublic assistance, and resource family cases.
[N.J.S.A. 2A:17-56.20; emphasis added.]
This section was adopted in 1985, well before the 1996 Federal PRWORA, which required that child support orders automatically be treated as judgments. The legislative history of section 56.20 indicates that the late payment fee or interest provision was based on a 1984 amendment to the Federal Child Support law that permitted States to assess late fees on overdue child support.
After noting that "[t]he [F]ederal Child Support Enforcement Amendments of 1984 require that the current State law be amended," the Statement on the Bill indicated:
Under the new federal law, the states may charge a late payment fee to the obligor as a deterrent to delinquency. This act would leave that option open to the state's child support program if it deems such measure would improve collections of child support.
[Statement to Senate, No. 2888 (1985).]
The legislative committee statement to the bill also indicated that the amendment
[p]ermits the State IV-D agency ... to assess interest or late payment fees on a support order which is 30 days overdue (current law has no provision for this). [Senate Institutions, Health and Welfare Committee Statement to Senate, No. 2888 (1985).]
The federal amendment on which N.J.S.A. 2A:17-56.20 was based, 42 U.S.C.A. § 654(21), provides that the State IV-D plan may assess a late charge on overdue support payments, provided that the late charge is collected only after the underlying support debt is satisfied. The State plan may
(A) at the option of the State, impose a late payment fee on all overdue support (as defined in section 666(e) of this title) under any obligation being enforced under this part, in an amount equal to a uniform percentage determined by the State (not less than 3 percent nor more than 6 percent) of the overdue support, which shall be payable by the noncustodial parent owing the overdue support; and
(B) assure that the fee will be collected in addition to, and only after full payment of, the overdue support, and that the imposition of the late payment fee shall not directly or indirectly result in a decrease in the amount of the support which is paid to the child (or spouse) to whom, or on whose behalf, it is owed.
[42 U.S.C.A. § 654(21)(A) and (B).]
In turn, § 666(e) defines "overdue support" as "the amount of a delinquency pursuant to an obligation determined under a court order" for child support. 42 U.S.C.A. § 666(e). In other words, the State IV-D agency may offset its collection expenses by charging a late fee which is in addition to the child support required to be paid under the terms of a court order. *676 But to avoid penalizing the child support obligee, the agency may only collect the fee after the underlying support obligation is satisfied.
We do not construe N.J.S.A. 2A:17-56.20 as affecting the authority of the Supreme Court to set the interest rate on child support judgments. Nor do we construe this provision as giving DHS the authority to determine that child support judgments shall not carry post-judgment interest. This provision predated the 1996 federal PRWORA and the 1998 State amendments that followed PRWORA, requiring that child support awards be automatically treated as judgments. Hence N.J.S.A. 2A:17-56.20 was directed at permitting DHS to assess late fees or interest on child support awards that had not yet been reduced to judgment.
Later amendments to the State law make clear that child support judgments, to be collected by Probation, can include court-ordered interest. The 1998 amendments to the State Act define "child support" as including interest:

"Child support" means the amount required to be paid under a judgment, decree, or order, whether temporary, final or subject to modification, issued by the Superior Court, Chancery Division, Family Part or a court or administrative agency of competent jurisdiction of another state, for the support and maintenance of a child, or the support and maintenance of a child and the parent with whom the child is living, which provides monetary support, health care coverage, any arrearage or reimbursement, and which may include other related costs and fees, interest and penalties, income withholding, attorney's fees and other relief.

[N.J.S.A. 2A:17-56.52; emphasis added.]
Likewise the Act defines "support order" as including interest:

"Support order" means a judgment, decree, or order, whether temporary, final or subject to modification, for the benefit of a child, a spouse or a former spouse, which provides for monetary support, health care coverage, arrearages or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees and other relief.

A support order shall be issued by the court or a court or administrative agency of another state.
[Ibid.; emphasis added.]
In fact, N.J.S.A. 2A:17-56.23a, enacted in 1988, specifically provides that

[a]ny payment or installment of an order for child support, or those portions of an order which are allocated for child support, whether ordered in this State or in another state, shall be fully enforceable and entitled as a judgment to full faith and credit and shall be a judgment by operation of law on and after the date it is due . . . Liens against real and personal property shall be subject to the same enforcement procedures as other civil money judgments except that no judicial notice or hearing shall be required to enforce the lien.
[N.J.S.A. 2A:17-56.23a; emphasis added.]
This section was amended in 1998 to add a provision concerning enforcement:
For obligors who reside or own property in this State, such judgments, once docketed with the Clerk of the Superior Court, shall have the same force and effect, be enforced in the same manner and be subject to the same priorities as a civil money judgment entered by the court.
[Ibid.]
*677 Based on the legislative history of N.J.S.A. 2A:17-56.20, we conclude that the late fees and interest which DHS is entitled to assess under that provision are distinct from the post-judgment interest permitted by the Court Rules. We do not construe N.J.S.A. 2A:17-56.20 as authorizing DHS to determine that child support judgments do not include post-judgment interest. Rather, we construe section 56.20 as authorizing DHS to impose a late fee against delinquent obligors as a disincentive to late payment and as permitting DHS to impose interest on overdue child support not yet reduced to judgment, a function rendered obsolete by later amendments that automatically give those awards the status of judgments.

The Court Rules
The Court Rules provide that the enforcement of child support orders shall be governed by the Administrative Director of the Courts, and that child support shall be collected by the Probation Division:
The responsibility for the administration and enforcement of the judgment or order... shall be governed by the policies established by the Administrative Director of the Courts. Alimony, maintenance, or child support payments not presently administered by the Probation Division shall be so made on application of either party to the court unless the other party, on application to the court, shows good cause to the contrary.
[R. 5:7-4(b).]
The Rules also provide for the assessment of interest on overdue child support payments:
For past-due alimony or child support payments that have not been docketed as a civil money judgment with the Clerk of the Superior Court, the court may, on its own motion or on motion by the party bringing the enforcement action, assess a late interest charge against the adverse party at the rate prescribed by Rule 4:42-11(a).
[R. 5:7-5(a).]
The Rules also explicitly provide that child support judgments carry post-judgment interest at the rates provided in R. 4:42-11 for all other judgments:

In accordance with N.J.S.A. 2A:17-56.23a, past-due child support payments are a judgment by operation of law on or after the date due and are subject to post-judgment interest at the rates prescribed in Rule 4:42-11 at the time of satisfaction or execution. Past-due child support payable through the Probation Division shall be automatically docketed as civil judgments with the Clerk of the Superior Court on the first day of the month following the date the payment was due. The Probation Division may, with the authorization of a child support judgment creditor, assist that party in calculating post-judgment interest in accordance with Rule 4:42-11 at the time an offer of satisfaction is tendered or an execution of assets is initiated. For child support that is not payable through the Probation Division, the obligee shall file a motion with the court asking that the amount of past-due child support be fixed and that a judgment be entered for that amount. The obligee shall be responsible for filing the judgment with the Clerk of the Superior Court. Alternatively, the obligee may procure a judgment by filing an application with the Probation Division requesting that past-due and future child support payments be made through that office in accordance with Rule 5:7-4(b).
[R. 5:7-5(g); emphasis added.]
The statute cited in R. 5:7-5, N.J.S.A. 2A:17-56.23a, requires that "[a]ny payment or installment of an order for child support" shall become a judgment by operation *678 of law when due and is to be enforced in the same manner as any other civil money judgment. We construe this statute as requiring that child support judgments carry post-judgment interest, as do other civil judgments. To that end, Rule 5:7-5(g) implements the statute by specifying that child support judgments are subject to post-judgment interest. In fact, comment 2 to Rule 5:7-5 indicates that "[p]aragraph (g) provides expressly for post-judgment interest calculations on child support judgments." Pressler, Current N.J. Court Rules, comment 2 on R. 5:7-5 (2006). Since, under some circumstances, child support is not collected through Probation, Rule 5:7-5(g) gives a child support obligee the option of applying to the court to enter a judgment for any past-due child support. In that situation, the obligee may also seek assistance from Probation in calculating post-judgment interest at the time the obligee executes on the judgment or the obligor offers to satisfy the judgment. Ibid.
But Probation must calculate post-judgment interest when executing on judgments on behalf of obligees whose child support is paid through Probation. Appendix XIII to the Court Rules, which is a Certification of Child Support Arrears to be completed by the County Probation Department, provides for a certification of both past-due child support payments and "post-judgment interest." Certification of Child Support Arrears, Pressler, Current N.J. Court Rules, Appendix XIII to R. 4:101-5(c) at 2453 (2006). Pursuant to Rule 4:101-5(c), concerning warrants to satisfy judgments, if a child support judgment or order
requires payment through a probation department, the Chief Probation Officer shall issue, upon request, a certification as to the amount due in the form prescribed by Appendix XIII ... and the warrant of satisfaction shall be signed by both the creditor and the Chief Probation Officer.
From these Rules we infer that with respect to Probation-administered support accounts, Probation must calculate interest in connection with execution on the obligor's assets and in connection with warrants to satisfy judgments, because that is when the interest is to be collected. Since the judgment is the property of the creditor, N.B. Sav. Bank v. Markouski, 123 N.J. 402, 422, 587 A.2d 1265 (1991), and post-judgment interest is part of the judgment under R. 4:42-11(a), absent a waiver by the creditor it would violate the creditor's due process rights for Probation to issue a satisfaction of judgment without requiring the debtor to pay the interest on an overdue judgment. Likewise, if Probation has located assets on which to levy, such as a debtor's tax refund, inheritance, or personal injury award, see N.J.S.A. 2A:17-56.23b, it would appear practical and effective to collect accumulated post-judgment interest at that time.
The history of Rule 5:7-5 supports this view. The section which became Rule 5:7-5(g) was recommended in the 1994-1996 Family Division Practice Committee Report. The Report noted that
Over the past three years, the automated filing of judgments in accordance with N.J.S.A. 2A:17-56.23a has improved the collection of past-due support. Judgment debtors, who are prevented from obtaining loans or transferring real property due to the liens created by these judgments, initiate contact with Probation and pay the full past-due amount, including interest, to satisfy their judgments.
[Id. at 24; emphasis added.]
The Report then discussed the logistical problems that Probation had experienced in calculating interest on late child support *679 payments, leading the Supreme Court to impose a stay in 1982 on "the assessment and collection of late interest charges for support payments" pursuant to an older version of Rule 5:7-4, which had provided that child support payments payable through Probation "`shall be subject to a late interest charge at the rate prescribed by Rule 4:42-11(a).'" Id. at 31-32. But the Report also noted that the stay "did not extend to past-due support that was reduced to a civil money judgment pursuant to a court order." Id. at 32. But once N.J.S.A. 2A:17-56.23a "made all child support payments a judgment by operation of law," the Report noted,
[A]ll past-due child support is subject to the assessment of post-judgment interest in accordance with Rule 4:42-11; not as delinquent court-ordered payments, but as civil money judgments. Generally, post-judgment interest is assessed and collected at the time of satisfaction or execution of the judgment. Because all past-due child support payments are now a judgment by operation of law, they are automatically filed as judgments (if payable through Probation), and are subject to post-judgment interest at the time of satisfaction or execution.
[Id. at 32-33.]
The Report also noted the logistical difficulty Probation faced in calculating post-judgment interest.
At the present time, Probation is responsible for more than 230,000 child support judgments. When a debtor makes an offer for satisfaction of a child support judgment, the Probation Division contacts the creditor to determine if post-judgment interest is desired.... Unfortunately, due to the complexity of calculating post-judgment interest for child support, most creditors waive post-judgment interest and accept only the principal amount of the judgment in lieu of full satisfaction. Additionally, the need to contact creditors regarding post-judgment interest often leads to significant delays in the child support judgment satisfaction process and the frequent postponement of real estate settlements.
[Id. at 33.]
Accordingly, the Committee recommended that the AOC provide Probation with "computer software that calculates post-judgment interest in accordance with the payment and distribution scheme used by Probation." Id. at 34. However, apparently recognizing that Probation did not yet have the capability to calculate and collect post-judgment interest on an ongoing basis, the Committee recommended the current version of the Rule, which provides that overdue child support payments "are a judgment by operation of law... and are subject to post-judgment interest... at the time of satisfaction or execution." R. 5:7-5(g). See also Pressler, Current N.J. Court Rules, comment 1 on R. 5:7-4 (2006) (discussing the history of R. 5:7-5(a) and R. 5:7-5(g)).
The State's primary contention advanced at oral argument was that Probation does not have the resources to calculate interest on child support judgments on an ongoing basis, that is, as arrears accrue. But the Court Rules, as we construe them, do not require Probation to undertake an ongoing calculation. And in this case, the plaintiff hired an expert to calculate the interest. Where a litigant calculates the interest, as was done here, and applies to the court to have the interest added to her child support judgment and to the obligor's Probation account, the court must grant the application.
Ordinarily we will defer to an agency's reasonable construction of its own enabling legislation. See Williams v. Dep't *680 of Human Services, 116 N.J. 102, 107-08, 561 A.2d 244 (1989) (remanded by 121 N.J. 589, 583 A.2d 297 (1989)); Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App.Div.1999). But we reject the contention, reflected in the DHS transmittal letter, that State legislation has given the IV-D agency discretion to decide whether child support judgments will carry post-judgment interest. This transmittal letter was not adopted as a regulation, it is inconsistent with the history and purpose of the State laws and Court Rules concerning collection of child support, and we conclude it is entitled to no deference. Further, although the State's appendix provided us with the State IV-D Plan (State Plan for Child Support Enforcement Program) approved by the Federal government, and the Cooperative Agreement Between the Division of Family Development and the Administrative Office of the Courts FFY 2004, the State's brief does not cite to any specific provisions of those documents to support its position that Probation is not required to collect post-judgment interest.
In its brief, the State also argues that if as part of the State IV-D plan the IV-D agency attempts to collect interest on child support judgments but does not succeed in collecting all of it, the Federal Government will penalize the State for failing to collect the interest even though the State may be collecting a greater total amount for the benefit of children than it would if it only sought to collect the overdue support. In other words, the State posits that the Federal Government will discourage States from trying to collect interest on child support judgments by denying incentive payments to States that try to do so but without complete success. The State did not cite anything in the record to support this position. And we will not assume that the Federal Government would enforce a policy so plainly contrary to the overall purpose of the IV-D program to encourage collection of the greatest possible amount of support monies for children who might otherwise need assistance from public funds.

III
To summarize, Federal law requires that the IV-D agency enforce child support judgments, which under Federal law may include interest. Both Federal and State law require that child support judgments be enforceable to the same extent as are all other judgments. The Court Rules accordingly provide that child support judgments carry post-judgment interest, as do other civil judgments in this State. The IV-D agency must collect the child support judgments for which State law provides. State law provides that child support judgments include post-judgment interest at the time of execution or satisfaction. Therefore, when Probation locates assets of an obligor and executes upon them, it must calculate and include in its execution the collection of any post-judgment interest which has accrued on the judgment. Likewise, when an obligor seeks a warrant to satisfy a judgment which is part of a Probation-administered child support account, Probation must calculate any post-judgment interest and ensure that the obligor pays the interest before the warrant of satisfaction is issued.
Finally, we turn to plaintiff's motion in this case, that interest be added to the child support judgment which is to be collected through the Probation account. We conclude that the motion should have been granted. Plaintiff calculated the interest on the overdue child support, which in this case was seventeen years in arrears. Probation was not required to use its resources to make the calculation. Federal law requires that the State IV-D agency's computer system be able to document interest owed on child support judgments, and we perceive no rational reason why, if plaintiff has calculated the interest herself, it should not be added to the Probation *681 account. If Probation can locate assets of defendant upon which to levy, the judgment can be collected together with the interest without the need for further expenditure of administrative resources to calculate the interest.[2]
Accordingly, we reverse the trial court's order and remand for entry of an order adding post-judgment interest to defendant's Probation support account.
Reversed and remanded.
NOTES
[1] We reject the argument by the Board of Social Services that plaintiff lacks standing. Unlike the plaintiffs in Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), plaintiff here is not seeking to enforce a general right to effective enforcement of Title IV-D. Rather, she is seeking to enforce her right, under the aegis of this State's statutes and Court Rules, to have post-judgment interest added to the Probation arrears account.
[2] The State concedes that Probation enforces out-of-State child support judgments that include post-judgment interest pursuant to the laws of the States in which those judgments were entered. We need not address plaintiff's contention that collecting interest for creditors with out-of-state judgments but not those with New Jersey judgments would violate the Equal Protection Clause.