**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2386-16T2
                 A-0122-17T2

AARON CHANDLER,

    Plaintiff-Appellant,

v.

ANTOINETTE CHANDLER,

    Defendant-Respondent.

_____

ANTOINETTE CHANDLER,

    Plaintiff-Respondent,

v.

AARON CHANDLER,

    Defendant-Appellant.

_____

        Submitted May 30, 2018 — Decided June 21, 2018

        Before Judges Mawla and DeAlmeida.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Middlesex
        County, Docket Nos. FM-12-1165-14 and FM-12-
        1024-10.

        Aaron Chandler, appellant pro se.

Cohen & Marinello, LLC, attorneys for respondent (Ronald A. Cohen, on the brief).

PER CURIAM

In A-2386-16, Aaron Chandler[1] appeals from an order dated November 4, 2016, which denied his motion to terminate alimony and apply the overpayment to child support, and granted Antoinette Chandler's motion to compel payment of child support arrears, modify child support, and pay for college expenses. Aaron also appeals from a December 22, 2016 order denying reconsideration. In A-0122-17, Aaron appeals from a June 7, 2017 order denying his motion to modify custody and disqualify the motion judge, and a July 20, 2017 order denying his motion for reconsideration. We consolidate these back-to-back matters for purposes of this opinion, and affirm.

We glean the following facts from the record. The parties were married in April 1999. Two children were born of the marriage, a daughter now twenty-one, and a son now nineteen years of age. The parties were divorced in July 2010, and their final judgment of divorce incorporated a property settlement agreement (PSA).

---

[1] We utilize the parties' first names to differentiate them because Aaron Chandler is plaintiff in A-2386-16 and defendant in A-0122-17, and Antoinette Chandler is defendant in A-2386-16 and plaintiff in A-0122-17. By doing so we mean no disrespect.

The PSA provided the parties would share joint legal custody of the children, with Antoinette designated as the parent of primary residence. The PSA provided Aaron would have reasonable parenting time with the children, including every other weekend from Friday after school until Sunday evening.

The PSA also established child support, payable to Antoinette at a rate of $101 per week through probation, based on Aaron's unemployment compensation of $600 per week, and Antoinette's income of $750 per week. The PSA stipulated child support would be recalculated upon Aaron obtaining employment.

With regard to extracurricular activities and educational expenses, the PSA stated:

> 38.    EXTRACURRICULAR   ACTIVITIES/EDUCATIONAL EXPENSES
>
> At this time [Aaron] and [Antoinette] do not agree to share the cost for the children's extracurricular activities.   Upon [Aaron's] full[-]time employment, the cost of the extracurricular activities shall be revisited.
>
> 39. POST HIGH SCHOOL EDUCATIONAL PROVISION:
>
> The parties are desirous of their children attaining a college education to the extent appropriate and consistent with the talents, potential and abilities of the children. The parties and children shall apply for the maximum available scholarships, grants, loans and financial aid available. In the event that after the application of any financial aid, scholarships and/or grant, there is a

> balance due, the parties agree to share in the
> costs of the college education in accordance
> with their respective incomes.

The PSA provided Aaron would pay Antoinette alimony at a minimum of $130 per week for five years, commencing when he obtained full-time employment. The PSA stipulated if Aaron obtained employment earning between $85,000 and $94,999, alimony would be $165 per week, and if he obtained employment earning more than $95,000, alimony would be $200 per week. After thirty months, the parties were to exchange income information, and Aaron's alimony obligation would be recalculated to represent one-third of the difference between the parties' incomes.

In August 2016, Aaron filed a motion seeking to terminate his alimony payments, and "apply any over payment of alimony to arrears or to credit child support order." It appears Aaron's alimony obligation was $200 per week at the time he filed his motion. Antoinette agreed Aaron was entitled to a termination in alimony, but noted Aaron's alimony and child support arrears totaled $3641.02. Therefore, Antoinette cross-moved for an order: 1) requiring Aaron to satisfy all arrears before modifying the wage garnishment; 2) modifying child support consistent with Aaron's current income; 3) reimbursing Antoinette for college and extracurricular activities expenses she paid on behalf of the children; and 4) counsel fees.

The motion judge terminated Aaron's alimony obligation effective August 26, 2016. The judge ordered Aaron to satisfy all alimony and child support arrears before receiving a modification of the monthly wage garnishment. The judge ordered child support to be recalculated, and Aaron was ordered to submit financial information for those purposes.

Aaron was ordered to reimburse Antoinette for his share of college and extracurricular activities. Pursuant to the PSA, the judge noted the parties agreed to contribute to college expenses in accordance with their respective incomes. The judge reasoned because "the parties' incomes, based upon the respective parties' paystubs are $1729 net for [Aaron] and $1459 net for [Antoinette], the parties shall hereby evenly split (50/50) college costs for [the parties' daughter] as per the parties' [PSA]." The judge also stated because the parties' PSA provided contributions to extracurricular activities would be evaluated once Aaron was employed, and Aaron was employed, he was responsible for fifty percent of the extracurricular expenses on behalf of the children.

Aaron sought reconsideration of the order, specifically the college contribution and extracurricular activities costs. He argued the judge erred by failing to apply the factors in Newburgh v. Arrigo, 88 N.J. 529 (1982), before ordering the college contribution. Aaron's motion for reconsideration was denied. The

motion judge stated "a <u>Newburgh</u> analysis is not necessary when the parties have stipulated to sharing college costs as the parties have in this matter." The judge also denied reconsideration of the order requiring Aaron to reimburse Antoinette for extracurricular costs, stating "the parties are to share these costs. It is inconsequential whether the extracurricular costs are reoccurring as it is stipulated that the parties shall split these costs in their [PSA]."

In May 2017, Aaron filed a motion seeking residential custody of the parties' son, claiming he wished to live with Aaron. Antoinette filed a cross-motion to enforce the orders for reimbursement of extracurricular activities. Aaron's motion was denied, and Antoinette's cross-motion was granted in part. The motion judge ordered Aaron to reimburse Antoinette for extracurricular activities within sixty days.

Aaron filed a motion for reconsideration of the order denying him residential custody of the parties' son. In addition, he sought the recusal of the motion judge. Aaron's motion was denied. The judge found Aaron failed to demonstrate changed circumstances warranting a change in custody, and failed to demonstrate any grounds necessitating the judge's recusal. These appeals followed.

I.

We begin by reciting our standard of review. "The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411—12 (1998). The "court must give due recognition to the wide discretion which our law rightly affords to the trial judges," and disturb such determinations only where the court abused its discretion. Larbiq v. Larbiq, 384 N.J. Super. 17, 21, 23 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). Appellate courts reverse only if there is "'a denial of justice' because the family court's 'conclusions are . . . "clearly mistaken" or wide of the mark.'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

However, "[t]his court does not accord the same deference to a trial judge's legal determinations." "Rather, all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citation omitted). Furthermore, "where there is a denial of a motion for reconsideration [pursuant to Rule 4:49-2], the standard . . . is 'abuse of discretion.'" Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

In A-2386-16, Aaron argues he should not be required to pay for extracurricular expenses. He argues paragraph 38 of the PSA states the parties agreed not to share extracurricular activity costs and would revisit them when he re-gained full-time employment. Aaron also argues laches bar Antoinette from seeking payment of extracurricular expenses because she waited three years before filing a motion. He argues neither Antoinette nor the parties' daughter made him aware of, or consulted with him about, the expenses. Aaron asserts the expenses are more than necessary to maintain their daughter in her dance activity.

Aaron also asserts Antoinette enrolled the parties' son in football training without his approval, and he should not have to contribute to the expense because he would have found inexpensive or free football training for their son. Aaron argues the expenses for their son are "not supported" by the child support guidelines because they are not a recurring activity, and do not warrant payment outside of the base child support amount.

Aaron argues he should not be required to pay for college because he is estranged from the parties' daughter. Alternatively, he argues that if he is compelled to pay, it should only be after he and their daughter go to therapy. He argues he should not be required to incur a loan for college until Antoinette demonstrates

she paid out-of-pocket for college. Aaron argues the judge did not consider the Newburgh factors.

In A-122-17, Aaron argues the motion judge did not consider the factors of N.J.S.A. 9:2-4(c) when the judge concluded Aaron had not established a changed circumstance. Aaron also argues the judge should have been disqualified for bias because he admonished Aaron to comply with the rules of court when filing motions. Aaron asserts the admonition constituted a threat, which violated the judicial canons. Aaron contends the judge was biased in favor of Antoinette's attorney because the judge cited cases supporting Antoinette's arguments. Aaron argues the judge was not competent because he misinterpreted the statutory bar on retroactive modifications. Aaron also asserts a member of the judge's staff was annoyed with him, which further demonstrates the judge's bias against him. We address these arguments in turn.

A.

Child support is the exclusive right of the child. Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993). Child support is a joint obligation of both parents for as long as a child remains un-emancipated. Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214-15 (App. Div. 2015); Lynn v. Lynn, 165 N.J. Super. 328, 343 (App. Div. 1979).

The guidelines state a child support award includes entertainment expenditures, specifically "[f]ees, memberships and admissions to sports, recreational, or social events, lessons or instructions, movie rentals, televisions, mobile devices, sound equipment, pets, hobbies, toys, playground equipment, photographic equipment, film processing, video games, and recreational, exercise or sports equipment."  Pressler & Verniero, Current N.J. Court Rules, cmt. 8 on Appendix IX-A to R. 5:6A (2018).  However, the guidelines also state "[b]ecause some child-related expenses represent large or variable expenditures or are not incurred by typical intact families, it is not appropriate to include them in the . . . basic child support award."  Pressler & Verniero, cmt. 9 on Appendix IX-A to R. 5:6A.  The guidelines specify:

> Other Expenses Approved by the Court — These are predictable and recurring expenses for children that may not be incurred by average or intact families such as private elementary or secondary education, special needs of gifted or disabled children, and NCP/PAR time transportation expenses.  The addition of these expenses to the basic obligation must be approved by the court.  If incurred, special expenses that are not predictable and recurring should be shared by the parents in proportion to their relative incomes (i.e., the sharing of these expenses should be addressed in the general language of the order or judgment).  Special expenses not included in the award should be paid directly to the parent who made or will make the expenditure or to the provider of the goods or services.

A-2386-16T2

[*Ibid.*]

Regarding Antoinette's request for reimbursement of extracurricular activities the motion judge concluded:

> [I]n accordance with the . . . [PSA], [paragraph] 38, [which] stated that extracurricular expenses would be revisited at the time [Aaron] is employed, and as [Aaron] is now gainfully employed, [he] shall hereby be responsible for [fifty percent] of the extracurricular expenses incurred by [Antoinette] on behalf of the parties' children[.]

We agree. Contrary to Aaron's argument, the PSA did not extinguish his obligation to contribute to extracurricular activities. Rather, the issue was to be addressed when Aaron gained employment, which he had done when the judge heard the motion. There is no evidence the motion judge abused his discretion by ordering Aaron to pay fifty percent of extracurricular activity expenses. Indeed, both children's activities fell within the guideline-defined "special expenses," because they were variable expenses. Pressler & Verniero, comment 9 on Appendix IX-A to R. 5:6A. Aaron misreads the guidelines as holding nonrecurring expenses are included within the base child support amount, whereas the guidelines instead state nonrecurring expenses should be paid in addition to child support. *Ibid.*

We also reject Aaron's argument the motion judge erred by not applying laches to Antoinette's request for contribution to the children's expenses.

> Laches is an equitable doctrine which penalizes knowing inaction by a party with a legal right from enforcing that right after passage of such a period of time that prejudice has resulted to the other parents so that it would be inequitable to enforce the right. The key ingredients are knowledge and delay by one party and change of position by the other.
>
> [L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002) (citation omitted).]

As we noted, child support is a right belonging to the child. Consistent with this premise we have held "there is no basis to impute to a child the custodial parent's negligence, purposeful delay or obstinacy so as to vitiate the child's independent right of support from a natural parent." Id. at 40.

We reject Aaron's reliance on laches as a bar to his obligation to contribute to the children's expenses. The equities do not favor application of the doctrine. Aaron does not dispute he owed child support and was in arrears thereby depriving Antoinette of funds she may have used to meet the children's needs. Moreover, even if Antoinette's motion was untimely, the length of the delay in filing it was not so significant that there was a

concomitant prejudice to Aaron by requiring him to contribute his share of the expenses for the children's benefit.

Furthermore, we reject Aaron's arguments the motion judge could not order him to contribute to the college expenses. It is well established that matrimonial settlement agreements are contractual in nature, and because they are voluntary and consensual, they are presumed valid and enforceable. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007); see Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995). Thus, "[a]s a general rule, courts should enforce contracts as the parties intended." Pacifico, 190 N.J. at 266. A court should "enforce [a contract] as written[,]" where the terms are unambiguous. Cty. of Morris v. Fauver, 153 N.J. 80, 103 (1998); see also Quinn v. Quinn, 225 N.J. 34, 39 (2016).

Moreover, within the context of a college contribution, we have stated:

> Absent inequity or unanticipated changed circumstances not addressed by the agreement, a court is obligated to enforce its terms when it was "entered [into] by fully informed parties, represented by independent counsel, and without any evidence of overreaching, fraud, or coercion." Otherwise, "the court eviscerates the certitude the parties thought they had secured, and in the long run undermines this Court's preference for settlement of all, including marital, disputes."

A court's obligation to enforce marital settlement agreements applies to provisions regarding the parents' obligation to pay for their children's college expenses. Although parents generally are not obligated to support a child who has attained the age of majority, "in appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for children." "In general, financially capable parents should contribute to the higher education of children who are qualified students."

Accordingly, where parties to a divorce have reached an agreement regarding children attending college and how those college expenses should be divided, and no showing has been made that the agreement should be vacated or modified, the Family Part need not apply all twelve factors pertinent to college expenses as identified in Newburgh. Rather, the court should enforce the agreement as written.

[Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 590-91 (App. Div. 2016) (alteration in original) (citations omitted).]

Here, the parties contracted in the PSA to share the costs of college commensurate with their respective incomes. The judge followed the parties' PSA. Aaron did not present credible evidence of an inequity or a substantial change in circumstance, which mandated relieving him from his obligation to contribute to college while Antoinette and the children bore the expense alone. Even if the evidence of Aaron's estrangement from the parties' daughter were proven to be the daughter's fault, it is but one factor within a twelve-factor Newburgh calculus, the balance of which Aaron did

not address. For these reasons, the motion judge was not required to analyze the Newburgh factors anew.

Aaron argues "the trial court abused its discretion by not acknowledging or adhering to the full context of N.J.S.A. 2A:17-56.23(a) by not applying [the] over payment of alimony to current child support arrears and ordering [Antoinette] to reimburse [him] for any overpayment through the child support agency." Aaron's argument is hard to decipher and, in any event, lacks merit.

"Our rules clearly impose upon the . . . parties to the appeal the absolute duty to make unnecessary an independent examination of the record by the court, R. 2:6-9, even though the court inevitably undertakes to review the record for itself." State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). Notwithstanding, we surmise Aaron is arguing the motion judge erred by declining to apply Aaron's alleged overpayment of alimony to his child support obligation, and that Aaron believes this to be a violation of N.J.S.A. 2A:17-56.23(a). Specifically, he believes because his alimony obligation was terminated effective August 26, 2016, and because he continued to pay alimony until November 4, 2016, the overpayment should have been applied to his child support obligation.

The record does not support Aaron's argument he overpaid alimony. His alimony arrears were $1741 as of September 21, 2016.

15

Aaron's alimony obligation was $200 per week, and there were six weeks of payment between the statement date and the order terminating his alimony obligation on November 4, 2016. Thus, Aaron's alimony payments during this time totaling $1200 would have been applied to his alimony arrears, which exceeded the payments, and he still owed alimony of $541.

Even if Aaron had overpaid alimony, it is not probation's role to collect from an obligee. Indeed, "all support orders are to be enforced by withholding income from the obligor unless the parties agree otherwise or the court so orders for good cause." Pryce v. Scharff, 384 N.J. Super. 197, 206 (App. Div. 2006) (emphasis added). Furthermore, an alimony overpayment is not included within the category of judgments subject to probation enforcement and collection. Id. at 209; see also N.J.S.A. 2A:17-56.52.

B.

As we noted, Aaron sought custody of the parties' then-seventeen-year-old son. Aaron challenges the motion judge's order denying the custody modification and asserts the failure to demonstrate a changed circumstance "should not be a sufficient reason to deny a change of custody, when a child has had the desire to live with a parent for many years." He further asserts the motion judge's order was "vague and often used reasoning by judges

to deny fathers custody[.]" Aaron argues he is entitled to custody pursuant to the factors under N.J.S.A. 9:2-4(c). We are unpersuaded.

At the outset:

> A judgment, whether reached by consent or adjudication, embodies a best interests determination. It is only when such a determination has been made and a judgment entered that a moving party must bear the threshold burden of showing changed circumstances which would affect the welfare of the children. . . . [T]he circumstances under which a prior judgment may be disturbed . . . are changed circumstances which would have an impact on the child's welfare.
>
> [Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993) (citation omitted).]

Secondly, we disagree the motion judge's findings were vague. Rather, pursuant to Todd, the motion judge found:

> [Aaron] . . . fails to demonstrate the changed circumstances necessary to effectuate a custody change. Further, [the parties' son] is [seventeen] years old and [Antoinette] certified that he only has one year of high school left and is comfortable in his school. As [the parties' son] will be [eighteen] this year, and as [Aaron] fails to demonstrate significant changed circumstances, the [c]ourt will not modify residential custody at this time.

We discern no error or abuse of discretion in the motion judge's findings. We add that the parties' son is presently eighteen years old, and N.J.S.A. 9:2-4 applies only to minors.

17

Therefore, the issue of custody is now moot because the parties' son is an adult. See Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) ("An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.") (quoting N.Y. Susquehanna & W. Ry. Corp. v. N.J. Dep't of Treasury, Div. of Taxation, 6 N.J. Tax. 575, 582 (Tax Ct. 1984)). "[C]ourts of this state do not resolve issues that have become moot due to the passage of time or intervening events." State v. Davila, 443 N.J. Super. 577, 584 (App. Div. 2016) (alteration in original) (quoting City of Camden v. Whitman, 325 N.J. Super. 236, 243 (App. Div. 1999)).

Finally, Aaron asserts the motion judge should have been disqualified for bias. We disagree.

Rule 1:12-1, in pertinent part, provides:

> The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter . . .
>
>     . . . .
>
> (g) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

Additionally, Canon 3.17(B)(1) of the Code of Judicial Conduct provides:

> (B) Judges shall disqualify themselves in proceedings in which their impartiality or the

appearance of their impartiality might reasonably be questioned, including but not limited to the following:

(1) Personal bias, prejudice or knowledge. Judges shall disqualify themselves if they have a personal bias or prejudice toward a party or a party's lawyer or have personal knowledge of disputed evidentiary facts involved in the proceeding.

[Code of Judicial Conduct, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part 1 at 534 (2018).]

Aaron has failed to offer any objective evidence of the bias alleged to warrant the motion judge's recusal. The record demonstrates the opposite of his assertions, namely, that the judge fulfilled his obligation to assess the evidence and apply the facts to the law in adjudicating the motions. R. 1:7-4(a). Aaron's arguments for recusal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2386-16T2