733 A.2d 540 (1999)
323 N.J. Super. 434
David L. BLECKER, M.D., M.P.H., Plaintiff-Appellant,
v.
STATE of New Jersey, William Waldman, in his official capacity as Commissioner, Department of Human Services; and Karen Squarrell, in her official capacity as Acting Director, Division of Medical Assistance and Health Services, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1999.
Decided July 12, 1999.
Michael Gross, River Edge, for plaintiff-appellant (Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, attorneys, Lloyd D. Levenson, Atlantic City, of counsel, Mr. Gross, Gerard W. Quinn, Atlantic City, and Patrick F. Cox, Lawrenceville, on the brief).
Charles A. Miller (Covington and Burling) of the Washington, D.C. bar, admitted pro hac vice, for defendants-respondents (Peter Verniero, Attorney General of New Jersey, attorney; Mary C. Jacobson, of counsel, Mr. Miller and John K. Worthington, Deputy Attorney General, on the brief).
Before Judges LANDAU and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
Since 1988, federal law has required states that participate in the Medicaid program to share with the federal government the cost of providing Medicare Part B benefits to persons whose income, while too high to qualify for Medicaid benefits, is at or below the federally defined poverty *541 level. See 42 U.S.C.A. § 1396d(p)(1), (3). Those persons are described as qualified Medicare beneficiaries, or "QMB's."[1] New Jersey participates in Medicaid and therefore is subject to cost-sharing for QMB's.
Medicare normally pays a physician-provider 80% of the federally adopted Medicare reimbursement rate. Ordinarily, the patient is responsible for an initial deductible and the 20% copayment, and the provider is limited to those amounts. With respect to QMB's, the provider is limited to the state Medicaid program's cost-sharing contribution in lieu of the QMB patient's share. The question before us is the same question the District of Columbia Circuit recently faced: "Are Medicare providers performing Part B services to QMBs entitled to state reimbursement for the entire twenty percent copayment that a non-QMB Medicare patient would normally pay, or may states limit reimbursement such that providers receive no more than the state's Medicaid rate for the same service?" McCreary v. Offner, 172 F.3d 76, 78 (D.C.Cir.1999).
Plaintiff is a physician who has treated QMB's for a number of years and received payments from the State Medicaid program pursuant to its cost-sharing responsibility. However, for the period between 1988 and February 10, 1995, the Division of Medical Assistance and Health Services (the "Division") allowed co-payments to providers such as plaintiff only at the generally lower Medicaid rates established pursuant to 42 U.S.C.A. § 1396a(a)(13), and not at the rates allowed under Medicare for non-state-subsidized patients. The Division interpreted the then controlling federal law, 42 U.S.C.A. 1396a(n),[2] to permit the lower Medicaid reimbursement rates to govern cost-sharing payments for QMB's.
As of February 10, 1995, the State conformed its Medicare cost-sharing plan to the ruling of the Third Circuit in a case challenging Medicaid rates paid for QMB's under a similar Pennsylvania plan. See Pennsylvania Medical Soc'y. v. Snider, 29 F.3d 886 (1994). From February 10, 1995 until July 20, 1998, New Jersey's Medicare co-payments for QMB's were based upon the higher Medicare maximums. The Department of Human Services amended N.J.A.C. 10:49-7.3(e)(1)(i) after Congress enacted § 4714 of the Balanced Budget Act of 1997, Pub.L. 105-33, Title IV, 111 Stat. 509-510 (1997), to again limit co-payments for QMB's to the lower Medicaid maximums as of July 20, 1998.
Plaintiff claims that he and others similarly situated[3] were entitled to payments at the higher Medicare levels prior to February 10, 1995. Section 4714(a) of the Balanced Budget Act of 1997, codified at 42 U.S.C.A. 1396a(n)(2), explicitly permits states to limit their Medicare cost-sharing payments to Medicaid rates. Section 4714(c) provides that § 4714(a) applies to pending lawsuits raising the issue. Plaintiff's complaint was pending in the Law Division when § 4714 was enacted.
The Law Division Judge granted defendants' motions to dismiss for failure to state a claim and for summary judgment, citing decisions of the Seventh and Ninth Circuits. See Paramount Health Sys., Inc. v. Wright, 138 F.3d 706, 711 (7th Cir.), cert. denied, ___ U.S. ___, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998); Beverly Community Hosp. Ass'n v. Belshe, 132 F.3d 1259 (9th Cir.1997), cert. denied, ___ U.S. ___, 119 S.Ct. 334, 142 L.Ed.2d 276 (1998). *542 Both courts held that federal law applicable to the period in dispute permits states to limit their cost-sharing obligation to Medicaid levels.
Plaintiff argues before us that § 4714 is not a binding interpretation of prior law; that Congress's attempt to clarify a prior statute violates constitutionally mandated separation of powers; that § 4714 violates his Fifth Amendment right to substantive due process; and that his complaint states claims for breach of contract and violation of 42 U.S.C.A. § 1983. We have carefully considered the briefs and arguments of counsel in light of applicable law. We are satisfied that the Division was authorized to limit reimbursement to medical providers such as plaintiff to the maximum Medicaid rate. Plaintiff is not entitled to any further payments, and we affirm the judgment dismissing plaintiff's complaint.

I
The Massachusetts Supreme Judicial Court has recently set forth the relevant statutory background in a case raising virtually the same issues we face. See Briggs v. Commonwealth, 429 Mass. 241, 707 N.E.2d 355 (1999).
Because this case concerns the interplay between two complex statutory schemes, Medicare and Medicaid, a discussion of the relevant aspects of each will provide the context for the dispute. Medicare, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., first enacted in 1965, provides two types of federally funded medical benefits to certain disabled individuals and people over the age of sixty-five years, regardless of financial need. 42 U.S.C. § 426(a), 1395c. Medicare Part A essentially covers hospital, post-hospital, and other inpatient services, and coverage is automatic. 42 U.S.C. § 1395c-1395i-4. Medicare Part B is a supplemental, voluntary insurance program providing coverage for physician and outpatient services. To obtain Part B coverage, patients must pay monthly premiums, and coverage does not begin until patients meet an annual deductible (§ 100). 42 U.S.C. §§ 1395l(b), 1395r, 1395s. Most important, once the deductible is met, Medicare covers only eighty per cent of the "reasonable charges" for a covered service; the patient is responsible for the remaining twenty per cent, known as the copayment. 42 U.S.C. §§ 1395l(a), 1395w-4. Collectively, the premium, deductibles, and copayment are referred to as "cost-sharing." 42 U.S.C. § 1396d(p)(3). Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., also enacted first in 1965, provides necessary medical assistance for certain low-income individuals, based on financial need. Administered by the States, the program provides Federal financial assistance to States that elect to provide medical services to low-income individuals.
....
Because the State Medicaid reimbursement rates generally are lower than the Federal Medicare rates, service providers who participate in the Medicaid program generally receive less than the "reasonable charge" determined by the Secretary for the same service covered under Medicare. See Rehabilitation Ass'n of Va., Inc. v. Kozlowski, 42 F.3d 1444, 1447 (4th Cir.1994), cert. denied, 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995). The Medicaid rate frequently is even less than the eighty per cent of the "reasonable charge" paid to providers by the Federal government under Medicare. Id. The Medicare and Medicaid statutes overlap for coverage of the population of elderly or disabled persons (eligible for Medicare) who are also poor (eligible for Medicaid). Referred to as QMBs, they are individuals who qualify for Medicare but who cannot afford to pay for the optional Medicare Part B premiums, deductibles, and copayments. 42 U.S.C. § 1396d(p)(1). QMBs, in turn, fall into two groups: those who are not *543 poor enough to qualify for Medicaid ("pure" QMBs) and those whose level of financial need is so great as to qualify them for Medicaid ("dual eligibles").
....
Of relevance to this lawsuit, QMBs no longer have to pay for Medicare Part B cost sharing. The State bears these costs because, since 1988, Federal law has made a State's participation in the Medicaid program conditional on the State's agreeing to pay on behalf of all QMBs the Part B costs that Medicare does not reimburse, 42 U.S.C. §§ 1396a(a)(10)(E)(i), 1396d(p)(3).
[Id. at 356-57 (footnotes omitted).]
II
Four federal courts of appeal, including the Third Circuit, interpreted 42 U.S.C.A. § 1396a(n) to require states within their jurisdiction to make co-payments to eligible providers up to the Medicare maximum levels. See Pennsylvania Medical Society v. Snider, supra, 29 F.3d at 889-90; Rehabilitation Ass'n. of Virginia, Inc. v. Kozlowski, 42 F.3d 1444 (4th Cir.1994), cert. denied, 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995); Haynes Ambulance Service, Inc. v. Alabama, 36 F.3d 1074 (11th Cir.1994); New York City Health and Hospitals Corp. v. Perales, 954 F.2d 854 (2d Cir.1992). Thereafter, presumably in reaction to those decisions, Congress enacted § 4714, entitled "Clarification Regarding State Liability for Medicare Cost-Sharing."
The original § 1396a(n), prior to its amendment by § 4714, was less than clear with respect to the required level of cost-sharing for QMB's. We agree with the Briggs court:
We need not conclude for ourselves which of the many plausible interpretations of § 1396a(n) represents the most probable intent of Congress. Our own review of the statutory provisions at issue, their accompanying legislative histories, and the numerous judicial interpretations of the statute before and after the 1997 "clarification" of the BBA, confirms for us that ... Congress was not clear in its intentions regarding the reimbursement rate for providers of Part B medical services to QMBs prior to the 1997 enactment of the BBA. We are not alone in reaching that view.
[707 N.E.2d at 361-62.]
As the Massachusetts court said, "[w]e certainly have little difficulty in rejecting [plaintiff's] claim that between 1988 and [1995] Federal law unambiguously mandated the division to reimburse providers for Medicare Part B services provided to QMBs at the Medicare rate." Id. at 362. See also Paramount Health Sys., Inc. v. Wright, supra, 138 F.3d at 711 ("The Act is a hopeless muddle so far as [QMB] reimbursement is concerned...."); Beverly Community Hosp. Ass'n v. Belshe, supra, 132 F.3d at 1266 ("any quality of crystal clarity is uniformly recognized as totally absent from the Medicaid and Medicare statutes (thus even one of the cases relied on by appellees, Kozlowski, 42 F.3d at 1450, has pungentlyand accuratelycharacterized the provisions detailing Medicaid and Medicare financing as `among the most completely impenetrable texts within human experience'")).
The issue before us, as it was in Paramount Health Systems, Beverly Community Hospital Ass'n, McCreary, and Briggs, is whether § 4714 merely clarifies rather than changes § 1396a(n), avoiding any retroactivity challenge and validating interpretations of § 1396a(n) to allow Medicaid rates as the maximum reimbursement for QMB's prior to enactment of § 4714.[4] We are satisfied that § 4714 is a clarifying act, and that the Division was entitled to limit payments as it did. Our intervention is unwarranted.

*544 III
Defendants interpreted the unclear federal statute governing cost-sharing levels just as did several other states' agencies and the federal Department of Health and Human Services. See McCreary, supra. Moreover, the enactment of § 4714 itself is evidence that the text of the original statute reasonably allowed more than one interpretation, including the Division's interpretation.
Given the extraordinary difficulty that the courts have found in divining the intent of the original Congress, a decision by the current Congress to intervene by expressly clarifying the meaning of Section 1396a(n) is worthy of real deference. Appellees' arguments that Act § 4714 is new law, despite Congress' unambiguous title for that section, cannot override that deference, because those arguments incorrectly presume a clearly established meaning for Section 1396a(n)-something that simply did not exist before Act § 4714 was adopted.
We therefore honor Congress' "clarification" label and accept Act § 4714's provisions as a statement of what Section 1396a(n) has meant all along. That moots all of appellees' constitutional objections to the new legislation, because those objections rest entirely on the assertedly retroactive, rather than declaratory, nature of Act § 4714. But it is worth adding that we have, en route to our decision, carefully explored the litigants' arguments both as to the pre-Act version of Section 1396a(n) and as to the constitutional issues raised by appellees if Act § 4714 were to be viewed as a retroactive change in, rather than a declaratory clarification of, the prior law-questions implicating the separation of powers, the Contract Clause and the Due Process Clause. And that exploration, which necessitated an effort on our part to parse the intricate and complex provisions of the pre-Act legislation, has only deepened our conviction that Congress' stated intention of clarifying that pre-existing law should be credited.
[Beverly Community Hosp. Ass'n., 132 F.3d at 1266-67.]
When an administrative agency interprets and applies a statute it is charged with administering in a manner that is reasonable, not arbitrary or capricious, and not contrary to the evident purpose of the statute, that interpretation should be upheld, irrespective of how the forum court would interpret the same statute in the absence of regulatory history. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694, 702-04 (1984). The McCreary and Paramount courts have followed the Chevron rule to reject challenges to the Medicaid level reimbursement rate for QMB's.
Federal circuit court decisions interpreting federal statutes are not binding upon our state courts. Nevertheless, decisions of those courts are entitled to respect as a matter of comity and in the interest of uniformity, especially where they are in agreement with each other. See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990). We deem that course appropriate here.

IV
It has been held that "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." Loving v. United States, 517 U.S. 748, 770, 116 S.Ct. 1737, 1749, 135 L.Ed.2d 36, 57 (1996); (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766, 778 n. 13 (1980)). See also Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 96, 79 S.Ct. 141, 145, 3 L.Ed.2d 132, 137 (1958).
The Loving doctrine's continued vitality has been questioned by the Seventh Circuit in Paramount, 138 F.3d at 711:

*545 So we're in a quandary concerning the continued vitality of the Loving line, and would welcome clarification from the Supreme Courtpending which we feel constrained by Loving to give some weight to Congress's declaration in the Balanced Budget Act that providers of services to quimbies are not entitled to reimbursement at full Medicare rates. Although we don't how much weight to give itprobably rather little in the circumstancesit is enough to tip the balance in favor of Chevron deference. The Act is a hopeless muddle so far as quimby reimbursement is concerned, and while it seems to us that Paramount has the better interpretation, there is sufficient ambiguity to require us to defer to the government. The judgment of the district court must therefore be reversed.
We need not resolve the status of the Loving doctrine. We conclude that § 4714(a) clarifies the meaning of the earlier enactment and adds weight to the Division's reasonable interpretation of § 1396(a)n, which is entitled to Chevron deference.

V
Plaintiff challenges on constitutional grounds that portion of § 4714 that provides for its retroactive application to all pending cases. None of the Circuit Courts that have addressed the issue before us has credited similar constitutional arguments raised before it. See McCreary, supra, 172 F.3d at 83; Paramount, supra, 138 F.3d at 711; Beverly Comm'y Hosp. Ass'n, supra, 132 F.3d at 1265, 1266-67 (as clarifying legislation, § 4714 raises no retroactivity problem). Nor has Massachusetts' highest court sustained a constitutional challenge. Briggs, supra, 707 N.E.2d at 364. We see no reason to depart from the path each of those courts has taken. Plaintiff had no property right and no vested interest in the higher payments he claims. See Paramount Health Systems, Inc., supra, 138 F.3d at 710.
We are satisfied that the original enactment was unclear and subject to more than one interpretation; that § 4714 clarified rather than changed the law; that the defendant's Division's interpretation was reasonable; and that the Chevron doctrine supports deference to that interpretation.
We affirm.
NOTES
[1] This case concerns only those persons who are not poor enough to qualify for Medicaid (so-called "pure" QMB's) and not those whose financial need qualifies them for both Medicare and Medicaid coverage ("dual eligibles"). See 42 U.S.C.A. § 1396d(p)(1).
[2] That section provided that States "may provide payment in an amount ... exceeding the amount that is otherwise payable" under Medicaid.
[3] Although filed as a class action, defendants' dispositive motions resulted in a judgment of dismissal before the issue of certification could be addressed.
[4] Plaintiff does not challenge the prospective application of § 4714.