991 A.2d 859 (2010)
412 N.J. Super. 530
Janet FLETCHER, Individually and as the Executrix of the Estate of Lynn T. Fletcher, Plaintiff-Respondent,
v.
CESSNA AIRCRAFT COMPANY, Defendant-Appellant, and
State of New Jersey Department of Transportation, Defendant.
No. A-4596-08T2
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2009.
Decided April 20, 2010.
*860 Jeffrey W. Moryan, Roseland, argued the cause for appellant (Connell Foley, attorneys; Mr. Moryan, of counsel and on the brief; Christine I. Gannon, Roseland and Neha Bansal, Short Hills, on the brief).
James Fitzgerald, Rutherford, argued the cause for respondent (Friedman, Kates, Pearlman & Fitzgerald, attorneys; Mr. Fitzgerald, on the brief).
Before Judges WEFING, GRALL and MESSANO.
The opinion of the court was delivered by
*861 GRALL, J.A.D.
On February 25, 2005, Lynn T. Fletcher was piloting his Cessna Model 182P and died in a crash on takeoff from Greenwood Lake Airport in West Milford, New Jersey. The National Transportation Safety Board has determined that the probable cause was an inadequate preflight inspection resulting in a total loss of engine power due to ice in the fuel system. The plane was manufactured in 1975 and delivered to its initial owner on April 11, 1975. This accident occurred nearly thirty years later. There is no evidence that defendant Cessna Aircraft Company (Cessna) serviced the aircraft, supplied a new part of any kind after delivery of the plane to the initial owner or provided any information to Fletcher after he purchased the aircraft from a prior owner in 1992.
Plaintiff Janet Fletcher, individually and as the executrix of her husband's estate, filed this suit alleging, among other things, that Cessna failed to warn about measures to prevent, correct and avoid a crash caused by ice in the aircraft's fuel system.[1] The trial judge denied Cessna's motion for dismissal on summary judgment, and we granted Cessna leave to appeal.
Cessna claims that this action against it is barred by the General Aviation Revitalization Act of 1994, 49 U.S.C.A. § 40101 note (GARA). GARA is "a statute of repose that generally bars suits against airplane manufacturers brought more than eighteen years after the delivery date to an initial purchaser of the aircraft." Robinson v. Hartzell Propeller, Inc., 454 F.3d 163, 165 (3d Cir.2006). GARA does not apply unless the action against the manufacturer is one "in its capacity as a manufacturer." GARA Section 2(a).
This appeal raises one question: Whether an action for damages based on Cessna's failure to warn about the potential for ice in the fuel system or to advise about measures available to avoid the condition and its catastrophic consequences is brought against Cessna "in its capacity as a manufacturer." We conclude that it is and reverse.
The question presented is one of statutory interpretation that is subject to de novo review. In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007). A court's primary goal when interpreting a statute is to determine the Legislature's intent. Higgins v. Pascack Valley Hosp., 158 N.J. 404, 418, 730 A.2d 327 (1999). The inquiry begins with the language of the statute, which generally controls when the meaning is clear. Ibid. When the statutory language is susceptible of different meanings, courts "seek to effectuate the fundamental purpose for which the legislation was enacted" and may look to legislative history to identify the intended goals. Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 24-25, 970 A.2d 354 (2009) (internal quotations omitted); Daidone v. Buterick Bulkheading, 191 N.J. 557, 565-66, 924 A.2d 1193 (2007). Where the statute is a federal law, the interest of comity and the benefits of uniform application require us to consider and give due deference to decisions of federal and state courts interpreting the statute. See Glukowsky v. Equity One, Inc., 180 N.J. 49, 64, 848 A.2d 747 (2004), cert. denied, 543 U.S. 1049, 125 S.Ct. 864, 160 L.Ed.2d 770 (2005); S & R Assocs. v. Lynn Realty Corp., 338 N.J.Super. 350, 356, 769 A.2d 413 (App.Div.2001); Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App. *862 Div.1999); see also Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43, 109 S.Ct. 1597, 1605-06, 104 L.Ed.2d 29, 43 (1989).
GARA is an amendment to the Federal Aviation Act of 1958. Its first substantive provision, Section 2, provides in pertinent part:
(a) Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred
(1) after the applicable limitation period [eighteen years[2]] beginning on
(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or
(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of the completion of the replacement or addition.

[(Emphasis added).]
There is no question that this civil action for damages for death and personal injury is one arising out of an accident involving a general aviation aircraft and brought against the manufacturer. And, there is no dispute that the accident occurred long after the eighteen-year period following delivery of the aircraft to its initial owner and that no new part manufactured by Cessna is alleged to have caused Fletcher's death.
The question in this case, as noted above, is whether plaintiff's claim is brought against Cessna "in its capacity as a manufacturer." Plaintiff's argument, as we understand it, is that a manufacturer acts in its capacity as such only while manufacturing the aircraft or part. Therefore, in plaintiff's view, an action for failure to warn or advise about proper servicing, storage and use of a properly manufactured aircraft is not an action against Cessna "in its capacity as a manufacturer" but in a capacity better characterized as "servicing" or "publishing instructional materials."
Section 2 suggests that plaintiff is mistaken. Subsection (b) of Section 2 includes four exceptions to GARA's grant of repose. One of the exceptions indicates that Congress considered claims that might arise from a manufacturer's failure to provide information about performance, operation, service and maintenance and concluded that such claims would fall within the class that are pursued against a manufacturer "in its capacity as a manufacturer." Subsection (b)(1) permits an action if a plaintiff
pleads with specificity the facts necessary to prove, and proves, that the manufacturer... knowingly misrepresented to the Federal Aviation Administration [(FAA)], or concealed or withheld from *863 the [FAA], required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm....
[GARA Section 2(b)(1) (emphasis added).[3]]
Unless Congress viewed claims based upon disclosure or failure to disclose such information as conduct undertaken by a manufacturer "in its capacity as a manufacturer," there would be no need for the exemption from subsection (a) set forth above. Fundamental rules of statutory construction militate against an interpretation of a statute that requires a court to assume that a provision is surplusage; the presumption is "that every word in a statute has meaning." In re Att'y Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Groups," 200 N.J. 283, 298, 981 A.2d 64 (2009). Moreover, the fact that Congress crafted an exception for certain egregious failures to disclose information to the FAA suggests that Congress did not intend to preserve other claims based on failure to disclose or advise.
Any remaining doubt about Congress's intent to protect manufacturers from claims based upon failure to disclose or advise is resolved by considering the evidence of Congress's purpose found in the various reports of the congressional committees that considered GARA. See Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001) (discussing the propriety of considering legislative materials). GARA was enacted "in response to a serious decline in the manufacture and sale of general aviation aircraft by United States companies." H.R.Rep. No. 103-525, pt. 1 (1994), reprinted in 103rd Cong., 2nd Sess. 1994, 1994 U.S.Code Cong. & Admin.News. 1638. The decline was viewed as detrimental to employment and the position of the United States in international trade. Ibid.; S.Rep. No. 103-202 (1993). Attributing the decline, in part, to the costs of lawsuits, the Committee Reports identify unique characteristics of the general aviation industry and its regulation warranting a statute of repose. Aircraft "are built to last," resulting in a "long tail of liability." S.Rep. No. 103-202. In addition, because the FAA's "cradle to grave" federal regulatory oversight of the industry generally insures safety, "a valid basis for a suit against the manufacturer of an aircraft that is more than [eighteen] years old" is unlikely. H.R.Rep. No. 103-525, pt. 1, 2, 103rd Cong., 2nd Sess. 1994, 1994 U.S.Code Cong. & Admin.News. 1638, 1644.
The eighteen-year statute of repose is designed to "strike a fair balance by providing some certainty to manufacturers, which will spur the development of new jobs, while preserving [a] victim[']s right to bring suit for compensation in certain particularly compelling circumstances." H.R.Rep. No. 103-525, pt. 2, 103rd Cong., 2nd Sess. 1994, 1994 U.S.Code Cong. & Admin.News. 1644. Limits on the protection afforded to manufacturers that favor victims are imposed not only through the exceptions in Section 2(b) discussed above but also through the phrase "in its capacity as a manufacturer." The intended scope of that phrase is discussed in the Committee *864 Reports. Although "manufacturers of an aircraft or a component part are not immunized from liability[,] they may be subject to [suit] in some other capacity." Ibid. (emphasis added). Examples of conduct "in some other capacity" are provided by way of illustration. They are a "negligent act as a mechanic of an aircraft or as a pilot" and "buil[ding] a new component part that was installed in the aircraft within the statute of repose." Ibid. Even with respect to installation of a new component part, the intent is to continue the bar of a suit based upon production of the plane but not one based upon production of the component part. Ibid.
In our view, these reports indicate a purpose to afford broad protection to manufacturers with narrow exceptions based upon conduct unrelated to their responsibility as the original manufacturer of the aircraft. The causes of actions Congress intended to preserve are those based upon a new act of manufacturingsuch as making a new part, which is addressed in Section 2(a)(2), or upon the manufacturer's performance of tasks unrelated to its responsibilities arising from the manufacturing of the aircraft and arising instead from post-delivery conductsuch as flying, servicing and repairing an aircraft, which is addressed by incorporating the phrase "in its capacity as a manufacturer" in Section 2(a). Both the language of GARA and the expressions of congressional intent favor a reading of the phrase "in its capacity as a manufacturer" that encompasses all duties and responsibilities arising from manufacturing.
Under New Jersey law and the facts asserted in this case, any cause of action plaintiff may have against Cessna for failure to provide information relevant to safe operation of the aircraft arises from the fact that Cessna manufactured the aircraft. Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242-43, 432 A.2d 925 (1981); Dixon v. Jacobsen Mfg. Co., 270 N.J.Super. 569, 637 A.2d 915 (App.Div.), certif. denied, 136 N.J. 295, 642 A.2d 1004 (1994). There is no evidence that Cessna manufactured a new part that was installed after initial delivery or serviced or repaired the aircraft so as to give rise to a duty to warn or advise based upon post-delivery conduct.
Courts of other jurisdictions that have addressed claims of failure to warn asserted against a manufacturer protected by GARA have uniformly determined that GARA bars a claim for failure to warn outside the eighteen-year period. Numerous decisions rest primarily on the ground that a duty to warn arises from the manufacturer's role in producing the aircraft and, therefore, the action is one against the manufacturer "in its capacity as manufacturer," and secondarily on the recognition that a construction of the phrase "in its capacity as a manufacturer" to permit claims of failure to warn would defeat congressional intent. See, e.g., Bain v. Honeywell Int'l, Inc., 167 F.Supp.2d 932, 937 (E.D.Tex.2001) (relying on Alter v. Bell Helicopter Textron, Inc., 944 F.Supp. 531 (S.D.Tex.1996)); Alter, supra, 944 F.Supp. at 540-41 (relying on federal decisions construing state statutes of repose similar to GARA and reaching the conclusion that the provision of maintenance and repair manuals is part of a "duty to warn as a manufacturer"); Burroughs v. Precision Airmotive, Corp., 78 Cal.App.4th 681, 694-700, 93 Cal.Rptr.2d 124 (2000) (dismissing a claim on the ground the duty to warn is "coextensive with the duties of a manufacturer acting in its capacity as a manufacturer"); Mason v. Schweizer Aircraft Corp., 653 N.W.2d 543, 551 (Iowa 2002) (providing updated manuals, even if for a fee, is done by a manufacturer "in its capacity as a manufacturer"); see also *865 Schamel v. Textron-Lycoming, 1 F.3d 655, 657 (7th Cir.1993) (concluding in a pre-GARA case subject to a state statute of repose that the "provision of service manuals and other sources of service information is not a separate and discrete, post-sale undertaking ...; rather, such information is generally necessary to satisfy the manufacturer's duty to warn" and citing Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1219-20 (10th Cir.1991)). We find these decisions persuasive.
Plaintiff attempts to distinguish this claim from failure to warn on a theory of continuing duty arising from Cessna's obligation to provide information in accordance with FAA regulations. That argument misses the point because the continuing duty, as discussed above, is based upon Cessna's role in manufacturing the plane. See Mason, supra, 653 N.W.2d at 550.
There is no need to discuss plaintiff's additional arguments at length. R. 2:11-3(e)(1)(E). They rest upon a theory that Cessna's business includes publication of information about its aircraft, an assertion that information about proper servicing and long-term storage is information provided in connection with Cessna's servicing, not its manufacturing role, and the dubious proposition that GARA does not apply because this plane was not defective.
On the facts of this case, whatever duty Cessna has with regard to the content of the information it publishes on servicing arises from its only conduct in connection with this planeits manufacture. Under general principles of statutory construction cautioning against absurdity, we will not strain the language of GARA on the assumption that Congress intended to permit plaintiffs who acknowledge that an aircraft is not defective to proceed but to bar those who can point to a defect. Strasenburgh v. Straubmuller, 146 N.J. 527, 541-42, 683 A.2d 818 (1996).
We recognize that there is some support for a claim based upon negligence in issuing a revised manual. On the theory that the manual is a component of the aircraft, courts have reached that conclusion. See, e.g., Caldwell v. Enstrom Helicopter Corp., 230 F.3d 1155 (9th Cir.2000). As a subsequent decision of the same court makes clear, however, that precedent has no application in a case involving a claim of failure to warn or advise. Lyon v. Agusta S.P.A., 252 F.3d 1078, 1088 (9th Cir.2001) (precluding plaintiffs from "bypass[ing] the GARA bar" by equating failing to revise a manual with replacing an aircraft part and distinguishing its prior decision on the ground that Caldwell involved a negligent revision), cert. denied, 534 U.S. 1079, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002).
For the foregoing reasons, we conclude that GARA requires dismissal of plaintiff's claims based upon Cessna's failure to warn about potential icing in the fuel system and failure to provide information on how to avoid that problem or others through use of fuel additives, maintenance, pre-flight inspections, storage of the aircraft and the like.
Reversed and remanded for further proceedings in conformity with this decision.
NOTES
[1] Plaintiff's complaint includes claims against others not relevant to this appeal. It also includes allegations of defects, which plaintiff has abandoned.
[2] Section 3 of GARA defines the term "limitation period" to mean "18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft."
[3] The other exceptions shed no light on the acts or omissions of a manufacturer that would fall within the protection afforded to one "in its capacity as a manufacturer." Those exceptions apply to an action brought under a warranty, Section 2(b)(4), and to claims related to the injury or death of a person who was "not aboard the aircraft" or was "a passenger for purposes of receiving treatment for a medical or other emergency," Section 2(b)(2)-(3).