15 A.3d 22

DOUGLAS TRAUTMANN, AN INFANT BY HIS GUARDIAN AD LITEM, DONNA TRAUTMANN AND THOMAS STRUBLE, AN INFANT BY HIS GUARDIAN AD LITEM, JAYNEANN STRUBLE, PLAINTIFFS–APPELLANTS, v. CHRIS CHRISTIE, GOVERNOR OF THE STATE OF NEW JERSEY[1] AND STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 18, 2010—Decided February 22, 2011.

---

[1] Governor Chris Christie is automatically substituted for former Governor Jon Corzine. *R.* 4:34–4.

Before Judges GRALL, C.L. MINIMAN and LeWINN.

*Gregg D. Trautmann* argued the cause for appellants (*Traut-mann & Associates, LLC*, attorneys; *Mr. Trautmann* and *Robert T. Trautmann*, on the brief).

*Sudha V. Raja*, Deputy Attorney General, argued the cause for respondents (*Paula T. Dow*, Attorney General, attorney; *Beth Leigh Mitchell*, Deputy Attorney General, of counsel; *Ms. Raja*, on the brief).

*Joseph J. Bell* argued the cause for amicus curiae Donna Weeks (*The Bell Law Group, P.C.*, attorneys, join in the brief of respondents).

The opinion of the court was delivered by

GRALL, J.A.D.

Chapter 37 of the Laws of 2009 requires drivers who operate a car under the authority of a special learner's permit, examination permit or probationary license issued in this State to display a decal on the car. *N.J.S.A.* 39:3–13.2a, :3–13, :3–13.4f (as amended by *L.* 2009, *c.* 37, §§ 1–3 and *L.* 2009, *c.* 38, §§ 5, 6, 9). As applied by the New Jersey Motor Vehicle Commission (MVC), only drivers under the age of twenty-one must comply.

Plaintiffs appeal from the dismissal of a complaint, filed on their behalf by their mothers, seeking declaratory and injunctive relief on the grounds that Chapter 37 is preempted by the Federal Driver's Privacy Protection Act, 18 *U.S.C.S.* §§ 2721–2725; violates equal protection; and constitutes an unreasonable search and seizure contrary to the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution.[2] Finding none of the infirmities alleged, we affirm.

---

[2] By leave granted, Donna Weeks, a proponent of Chapter 37, a law known by the name of her child Kyleigh, filed an amicus brief in the trial court. On appeal she has joined in the briefs filed by the Attorney General on behalf of the State defendants.

Chapter 37 amends and supplements New Jersey's graduated driver's license system (GDLS), which took effect on January 1, 2001. *L.* 1998, *c.* 108, § 13. The purpose of the GDLS is described in a statement issued by the Senate Law and Public Safety Committee. The "graduated system of licensing [is] designed to phase-in [a driver's] exposure to increasingly complex driving tasks and environments as new drivers mature and develop their driving skills under supervised conditions." *Senate Law and Public Safety Committee, Statement to Senate Committee Substitute for S. 318* at 1 (February 23, 1998). It gives new drivers "greater opportunity to get their behind-the-wheel experience under conditions of controlled risk." *Ibid.* Its purpose is to make a basic license "a privilege" that can be "gained only by demonstrating, in a systematic and progressive manner, conscientious and responsible driving behavior in each stage of licensing." *Ibid.*

The GDLS requires a new driver to first obtain a permit, either a special learner's permit for those under seventeen or an examination permit for those seventeen and older, and then a probationary license, before applying for a basic license. *N.J.S.A.* 39:3–10, :3–13, :3–13.4a. The restrictions on driving privileges imposed through the GDLS vary with the driver's authorization and age. In general and subject to certain exceptions, holders of GDLS authorizations cannot drive between certain hours of the day, cannot drive with more than a certain number of non-parents and non-dependents in the vehicle, cannot use hand-held or hands-free wireless devices and are subject to special sanctions for violating the motor vehicle laws. *N.J.S.A.* 39:3–13.2a, :3–13, :3–13.4a.

Chapter 37 mandates that all holders of special learner's permits, examination permits, and probationary licenses display on their vehicles "highly visible, reflective decals" issued by the chief administrator of the MVC indicative of the driver's status in a manner prescribed by the chief administrator so that they are "clearly visible to law enforcement officers." *N.J.S.A.* 39:3–13.2a, :3–13, :3–13.4f. Chapter 37's purpose is indicated by its

terms—facilitating enforcement of the GDLS restrictions on the privileges of the holders of permits and probationary licenses issued in this State.

Despite Chapter 37's unequivocal requirement that all GDLS holders display the decal, as clarified in supplemental briefs submitted by the parties at our request prior to oral argument, the MVC has determined that only those under twenty-one are obligated to obtain and display the decals. Plaintiffs' challenges are primarily based on the assertion that the mandatory decals disclose private information—their age group. They do not dispute or challenge the MVC's interpretation of Chapter 37.

We question the construction of Chapter 37 urged by the parties. Although the State defendants contend that it is the clear intent of the Legislature for Chapter 37 to only apply to those under twenty-one because the passenger and hour GDLS restrictions are limited to those drivers, we note that one GDLS restriction applies regardless of age. In particular, use of hands-free and hand-held wireless devices is forbidden regardless of the driver's age. *N.J.S.A.* 39:3–13, :3–13.4c. But because there is no challenge to the MVC's interpretation, we consider plaintiffs' objections to Chapter 37 as construed and applied by the MVC, its chief administrator and the Attorney General.

I

The display of decals required by Chapter 37 is not in conflict with or otherwise preempted by the Federal Drivers Privacy Protection Act, 18 *U.S.C.S.* §§ 2721–2725.

Pursuant to 18 *U.S.C.S.* § 2721, "a State department of motor vehicles" is forbidden from "disclos[ing] or otherwise mak[ing] available" any driver's "personal information" or "highly restricted personal information," except in specified circumstances not applicable here. Plaintiffs' argument, as we understand it, is that Chapter 37 is preempted because the mandatory display of decals by drivers under twenty-one compels what the Act prohibits—disclosure of "personal information."

Undoubtedly Chapter 37 would be preempted if it required what the Act prohibited. *English v. General Elec. Co.*, 496 *U.S.* 72, 79, 110 *S.Ct.* 2270, 2275, 110 *L.Ed.*2d 65, 74 (1990). But in our view, it does not. The decal permits an observer to infer that the driver is under twenty-one, but we cannot conclude that information disclosing a person's membership in a particular age group is "personal information" within the meaning of the Act.

The scope of the Act's prohibition against disclosure of personal and highly personal information presents a question of statutory interpretation subject to de novo review. *In re Liquidation of Integrity Ins. Co.*, 193 *N.J.* 86, 94, 935 *A.*2d 1184 (2007). The Act defines the critical terms, and our task is to determine if Congress intended to include a person's age group. *See Higgins v. Pascack Valley Hosp.*, 158 *N.J.* 404, 418, 730 *A.*2d 327 (1999). The inquiry begins with the language of the statute. *Ibid.* Because the Act is a federal law, "the interest of comity and the benefits of uniform application require us to consider and give due deference to decisions of federal and state courts interpreting the statute." *Fletcher v. Cessna Aircraft Co.*, 412 *N.J.Super.* 530, 534, 991 *A.*2d 859 (App.Div.2010). In this case, however, the parties have not cited and our research has not disclosed a published judicial or administrative interpretation of the Act that might inform our decision. Accordingly, we focus on the statutory definitions.

Under the Act, " '[h]ighly restricted personal information' means an individual's photograph or image, social security number, medical or disability information." 18 *U.S.C.S.* § 2725(4). The list is exhaustive, and it does not include age or age group.

The scope of the Act's definition of "personal information" is not as clear. "Personal information" means "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the five-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver status." 18 *U.S.C.S.* § 2725(3).

As we interpret the statute, this definition has two parts: 1) "information that identifies an individual," which is illustrated by a non-exhaustive list that follows; and 2) "medical or disability information." In other words, the commas that bound the list beginning with "an individual's photograph" and ending with "telephone number" act as parenthesis, with what lies between acting as illustrations of what is meant by "information that identifies an individual." The "and" designates a second definition of "personal information," separate from "information that identifies an individual."

We admit that the comma following "telephone number" could be read as a serial comma, with "medical or disability information" acting as the last item in a series meant to illustrate "information that identifies an individual." We reject this latter reading, however, as inconsistent with the sense of the statute as a whole. Medical or disability information simply is not information that "identifies an individual." It is not unique to a person the way the other items are. It would therefore be incongruent for Congress to have included "medical or disability information" on a list meant to illustrate what is meant by "information that identifies an individual"; its inclusion would disrupt the otherwise harmonious list. Our reading, in other words, "give[s] sense to the legislation as a whole," *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005), and avoids an "absurd result." *In re Tenure Hearing of Young*, 202 *N.J.* 50, 69, 995 *A.*2d 826 (2010).

As a matter of common usage and ordinary understanding, a person's age group does not identify an individual. It identifies the person as a member of a large segment of the population. We cannot, however, rely solely on the ordinary meaning of the phrase "information that identifies an individual" because it would also exclude information expressly included, such as address and telephone number which may be shared by several people. Accordingly, under well-settled principles of statutory construction, we must consider the non-exhaustive list that follows "information that identifies an individual" and determine whether age group is

of the same nature as the items in the list and, therefore, properly included within the definition. *State v. Hoffman,* 149 *N.J.* 564, 584, 695 *A.*2d 236 (1997); *Hovbilt, Inc. v. Twp. of Howell,* 263 *N.J.Super.* 567, 571, 623 *A.*2d 770 (App.Div.1993), *aff'd,* 138 *N.J.* 598, 651 *A.*2d 77 (1994); 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:17 (7th ed. 2007).

When it comes to providing information useful in identifying an individual, there is no similarity between age group and a photograph, social security number, driver's identification number, name, address or telephone number. The information the Act lists as identifying an individual either points to a specific person or provides a way to reach the person. Information about age group does neither, and we cannot conclude that Congress intended to prohibit its disclosure due to its capacity to identify an individual.

Nor is age group "medical or disability information." Membership in this youthful age group consisting of persons between sixteen and twenty-one clearly says nothing about a person's medical conditions or disabilities.

Plaintiffs argue that age, medical condition and disability are all of the same nature because they are private and very personal. We fail to see how age group is comparable to medical condition and disability in that regard. One who is between sixteen and twenty-one cannot conceal the physical characteristics that tend to establish his or membership in the group but need not disclose every medical condition and disability with each appearance in public.

Plaintiffs also present an argument based on the Act's legislative history that indicates the Act was intended to avoid disclosure of information that might facilitate the commission of crimes. *See generally State v. Donis,* 157 *N.J.* 44, 53, 723 *A.*2d 35 (1998) (discussing extrinsic evidence of congressional intent and notorious criminal incidents that led to the Act's adoption). They contend that age group, like information about medical condition and disability, tends to identify persons who are particularly vulnera-

ble. Setting aside that there is nothing obvious to us about persons between sixteen and twenty-one that makes them peculiarly vulnerable to criminal acts, knowledge of vulnerability, unlike knowledge that identifies an individual or where the individual may be reached, does not facilitate crimes.

For the foregoing reasons, we reject the claim that Chapter 37 requires disclosure of personal or highly personal information that is prohibited by the Act. Chapter 37 is not preempted.

## II

There is no merit in plaintiffs' claim that the decal requirement of Chapter 37 violates the equal protection clause, *U.S. Const.* amend. XIV, § 1, or Article I, paragraph 1 of the New Jersey Constitution, which "confer[s] the right to equal treatment under the law." *Doe v. Poritz*, 142 *N.J.* 1, 94, 662 *A.*2d 367 (1995).

Plaintiffs' challenge focuses on two groups of drivers that they claim are similarly situated to but are exempt from the decal requirements imposed on New Jersey residents. They point to drivers licensed in this State who are temporarily residing outside of New Jersey or serving in the military outside the State and may obtain a temporary license, *N.J.S.A.* 39:3–10n, and to drivers licensed in other states who drive in New Jersey pursuant to the touring privilege, *N.J.S.A.* 39:3–17.[3]

Before addressing the contours of the constitutional provisions plaintiffs invoke, we dispose of their claim that they are treated differently than those who obtain temporary licenses pursuant to *N.J.S.A.* 39:3–10n. Their objection is based on a misreading of the statute. *N.J.S.A.* 39:3–10n permits the chief administrator, at the administrator's discretion, to issue temporary driver's licenses that are valid without a digitized color picture of the licensee.

---

[3] Although the decal requirement as applied by the MVC to holders of examination permits and probationary licenses treats drivers under twenty-one differently than those who are twenty-one or older, plaintiffs do not challenge that age-based distinction.

*Ibid.* The chief administrator may issue such temporary licenses to "New Jersey *licensees* who are serving in the military outside the State or who temporarily are residents of another state or foreign country." *Ibid.* (emphasis added). The statute does not authorize the issuance of licenses to permitees, and even if we assume that the chief administrator issues these temporary licenses to holders of probationary licenses, there is no indication that a probationary licensee receives a temporary license exempt from the restrictions on driving privileges that accompany it while in this State.

We turn next to consider the validity of the distinction between youthful inexperienced drivers licensed in this State and those holding licenses issued elsewhere who are eligible to drive in accordance with *N.J.S.A.* 39:3–17. The essence of equal protection is that the government may not treat differently people who are alike in all relevant respects. *State v. Mortimer,* 135 *N.J.* 517, 536, 641 *A.2d* 257, *cert. denied,* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.2d* 351 (1994).

Under the federal constitution, "[a] classification that does not impact a suspect class or impinge upon a fundamental constitutional right will be upheld if it is rationally related to a legitimate government interest." *Doe, supra,* 142 *N.J.* at 92, 662 *A.2d* 367; *see Fed. Commc'ns Comm'n v. Beach Commc'ns,* 508 *U.S.* 307, 313, 113 *S.Ct.* 2096, 2101, 124 *L.Ed.2d* 211, 221 (1993); *Dandridge v. Williams,* 397 *U.S.* 471, 485, 90 *S.Ct.* 1153, 1161, 25 *L.Ed.2d* 491, 502 (1970). Review under this standard is for a rational basis and plaintiffs concede their challenge to this classification is subject to review under that standard.

Where the equal protection clause requires only a rational basis for a classification, the question is whether the classification is arbitrary. *Doe, supra,* 142 *N.J.* at 91, 662 *A.2d* 367. A classification that provides a "rational means to serve a legitimate end" is permissible, not arbitrary. *Id.* at 91–92, 662 *A.2d* 367 (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 *U.S.* 432, 441–42, 105 *S.Ct.* 3249, 3255, 87 *L.Ed.2d* 313, 321 (1985)). Con-

versely, a classification is invalid when the objectives of the law are not legitimate or the relationship between the asserted permissible goal and classification is so attenuated as to be arbitrary or irrational. *City of Cleburne, supra,* 473 *U.S.* at 446–47, 105 *S.Ct.* at 3258, 87 *L.Ed.*2d at 324; *Doe, supra,* 142 *N.J.* at 92, 662 *A.*2d 367.

Measured against those standards, Chapter 37 is constitutionally permissible. The purpose of Chapter 37 is to facilitate enforcement of the restrictions on the driving privileges enjoyed by holders of special learner's permits, examination permits and probationary licenses that have been issued by this State. Plaintiffs do not contend that the restrictions imposed by New Jersey's GDLS or their enforcement further impermissible goals. They simply challenge the rationality of the obligation to display a decal that treats them differently than drivers of the same age and experience with permits or licenses issued by another state.

The difficulty with plaintiffs' argument is that it overlooks that the GDLS restrictions enforced with the aid of the decal obligation do not apply to drivers licensed elsewhere. Because the GDLS does not apply to out-of-state drivers, Chapter 37's distinction between them and New Jersey drivers is a "rational" limitation on the decal obligation. It would be irrational and arbitrary to require those not subject to the GDLS restrictions to display a decal designed to facilitate enforcement of the restrictions.

Plaintiffs' equal protection argument fares no better under the State Constitution. Our courts "apply a balancing test which considers the nature of the right affected, the extent to which the government action interferes with that right, and the public need for such interference." *Doe, supra,* 142 *N.J.* at 94, 662 *A.*2d 367; *see Barone v. Dep't of Human Servs.,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987). The "critical issue" is "whether there is an appropriate governmental interest suitably furthered by the differential treatment involved." *Barone, supra,* 107 *N.J.* at 368, 526 *A.*2d 1055 (internal quotations omitted).

Measured under those standards, Chapter 37 passes muster. The governmental interest furthered by enforcement of the system of restricted driving privileges established by the GDLS is safety on the roadways of this State. The decals which must be used by young drivers subject to the GDLS restrictions are a suitable means of furthering that interest. It would serve no purpose at all to impose the same obligation on young drivers licensed elsewhere who are not subject to the GDLS. In short, Chapter 37's distinction between drivers permitted and licensed here and elsewhere does not treat differently people who are alike in the respect relevant to Chapter 37's goal. The minimal burden entailed in the display of the decal is greatly outweighed by the potential benefit to the enforcement of the GDLS.

In an effort to add weight to their side of the balance, plaintiffs argue that the disclosure of their age group impinges upon their right to privacy by compelling them to display decals showing their age group. The Supreme Court, however, has held that the government's disclosure of matters that are exposed to public view does not violate a privacy interest protected by either the federal or State constitution. *Doe, supra*, 142 *N.J.* at 80, 91, 662 *A.*2d 367. Membership in a particular age group is something its members expose to public view every time they appear in public.

We decline to discuss plaintiffs' policy arguments. The wisdom of Chapter 37 is a question for the Legislature not the courts. *Sykes v. Propane Power Corp.*, 224 *N.J.Super.* 686, 701, 541 *A.*2d 271 (App.Div.1988). Indeed, there are several pending bills in legislative committees as of the date of this opinion that would revise Chapter 37. Assemb. 2650, 214th Legis. Sess. (2010); Assemb. 2703, 214th Legis. Sess. (2010); Assemb. A3210, 214th Legis. Sess. (2010); S. 1908, 214th Legis. Sess. (2010); S. 1991, 214th Legis. Sess. (2010); S. 2238, 214th Legis. Sess. (2010).

III

Plaintiffs also challenge Chapter 37 as authorizing unreasonable searches and seizures prohibited by the State and

federal constitutions. *U.S. Const.* amends. IV, XIV; *N.J. Const.* art. I, ¶ 7. No statute "can authorize a violation" of the constitutional prohibition, *Almeida–Sanchez v. United States,* 413 *U.S.* 266, 272, 93 *S.Ct.* 2535, 2539, 37 *L.Ed.*2d 596, 602 (1973), and Chapter 37 does not.

The purpose of the prohibition against unreasonable searches and seizures is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court,* 387 *U.S.* 523, 528, 87 *S.Ct.* 1727, 1730, 18 *L.Ed.*2d 930, 935 (1967). Consistent with that purpose, protection does not extend to matters or facts in which a person does not have a reasonable expectation of privacy because the person exposes them to public view. *Katz v. United States,* 389 *U.S.* 347, 351, 88 *S.Ct.* 507, 511, 19 *L.Ed.*2d 576, 582 (1967); *Doe, supra,* 142 *N.J.* at 28 n. 8, 80, 662 *A.*2d 367.

Chapter 37 does not implicate reasonable expectations of privacy. True, the obligation to display a decal compels disclosure of information that permits identification of a driver's age group, but a driver has no reasonable expectation of privacy in that information because it is discernible from his or her physical appearance and necessarily exposed to public view. *United States v. Dionisio,* 410 *U.S.* 1, 14, 93 *S.Ct.* 764, 771, 35 *L.Ed.*2d 67, 79 (1973); *Doe, supra,* 142 *N.J.* at 28 n. 8, 80, 662 *A.*2d 367. Moreover, once the obligatory decal is visibly displayed on the car, it may be viewed; it is not a "search" for police to examine it, "an object required by law to be located in a place ordinarily in plain view from the exterior of [an] automobile." *New York v. Class,* 475 *U.S.* 106, 114, 106 *S.Ct.* 960, 966, 89 *L.Ed.*2d 81, 90 (1986); *Donis, supra,* 157 *N.J.* at 54–55, 723 *A.*2d 35 (quoting *Class* ). Finally, although plaintiffs do not claim otherwise, it is worth noting that Chapter 37 does not authorize officers to stop a car that bears a decal without a reasonable and articulable suspicion of a violation of the law. *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979); *State v. Amelio,* 197 *N.J.* 207, 211, 962

*A.2d* 498 (2008), *cert. denied,* —— *U.S.* ——, 129 *S.Ct.* 2402, 173 *L.Ed.*2d 1297 (2009).

## IV

To summarize, on the arguments presented to us, we find that Chapter 37 is neither preempted nor constitutionally infirm.

Affirmed.